UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | | |
|---|---|---|
| ANDREW C. CURTIN, Individually and as Personal Representative of the Estate of CYNTHIA CARTWRIGHT, | ) ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:24-cv-00427-LEW |
| | ) | |
| JOHNSON & JOHNSON, and PECOS RIVER TALC, LLC, | ) ) | |
| | ) | |
| Defendants | ) | |

**<u>ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT</u>**

In this action, Plaintiff Andrew Curtin, individually and as personal representative of the estate of his late spouse, Cynthia Cartwright, alleges that Ms. Cartwright's death from mesothelioma occurred as a result of her long-term use of Johnson & Johnson Baby Powder. The matter is before the Court on Defendants' Motion for Partial Summary Judgment (ECF No. 45), through which they contend that elements of certain claims cannot be met and that other claims are time barred. In addition, Plaintiff filed a Motion to Strike (ECF No. 90).

For reasons that follow, the Motion for Partial Summary Judgment is granted in part and denied in part. The Motion to Strike is denied.

## SUMMARY JUDGMENT FACTS

The parties agree that the record can support findings that Ms. Cartwright was diagnosed with mesothelioma on or about February 2, 2017; that the diagnosis reflects exposure to asbestos; that Ms. Cartwright died from mesothelioma on or about April 14, 2017; that Ms. Cartwright used Johnson & Johnson's Baby Powder ("JBP") throughout her adult life and during her marriage to Plaintiff; and that Mrs. Cartwright would routinely use JBP by pouring it into her shoes prior to leaving the house, daily in the warm months and a few times a week in the cold.

Plaintiff Andrew Curtin and his daughter, Delaney Curtin, testified that they remember seeing the JBP label on the white bottles used by Ms. Cartwright, but not any other writing on the bottles (for example, a "PUREST PROTECTION" banner). Defs. Stmt. (ECF No. 47) ¶¶ 1-9; Pl. Opposing Stmt. (ECF No. 53-2) ¶¶ 1-9. Based on the Curtins' lack of knowledge about Ms. Cartwright's preference for JBP and the fact that Ms. Cartwright cannot testify concerning any product representations that may have informed her selection or use of JBP, Defendants assert that the record will not support a finding that Ms. Cartwright relied on any representation made by Defendants when it came to her decision to use JBP rather than another product to powder her shoes. Defs. Stmt. ¶¶ 10-11.

Plaintiff resists the implications of Defendants' evidentiary contention based on Defendants' various advertisements and a "PUREST PROTECTION" banner printed on

bottles of JBP in some timeframe.[1]  Pl. Opposing Stmt. ¶¶ 10-11.   The referenced advertisements mostly depict the iconic JBP bottle in proximity to a baby and sometimes other members of the family, and indicate that what is good for application on a baby is good for application on an adult.  *See* Advertisement Exhibits (ECF Nos. 53-4, 53-5, 53-6, 53-7).

Plaintiff also states several additional facts pertaining to evaluations of Defendants' source ore and JBP product that invite a finding that Johnson & Johnson executives understood that their sources of talc ore include asbestos mineral deposits and that, consequently, JBP products could be contaminated with asbestos fibers or particles.  Pl. Add'l Stmt. (ECF No. 53-2) ¶¶ 1-31, 36-38.  These statements are varyingly qualified or denied by Defendants, Defs. Reply Stmt. (ECF No. 54), but based on a review of the exhibits cited by Plaintiff in support of the statements, a jury could find that Defendants knew of the potential for contamination of JBP products due to the presence of asbestos mineral deposits in their talc ore, knew also of actual asbestos contamination in JBP product (though they likely would say in inconsequential amounts), and sought to avoid disclosing to the public any level of asbestos contamination.

Plaintiff also seeks to make a case of fraud and misrepresentation based in part on the nature of communications that Defendants may have had with the Food and Drug

---

[1] The record suggests that the "Purest Protection" marketing was not a constant approach to labeling throughout the years.  Plaintiff also introduces supplemental record items and statements about an advertising campaign that targeted young women and girls in the 1970s, but does so through a Surreply (ECF No. 69).  These items were not properly presented in Plaintiff's statement of additional material facts for purposes of this summary judgment ruling and I do not base my ruling on them.

Administration ("FDA").  I do not relate those facts here for reasons stated in the discussion section of this Order.

Lastly, Plaintiff states that he first learned in 2020, through counsel, that JBP is a source of asbestos fibers that would explain Ms. Cartwright's disease process and death from mesothelioma.  Pl. Add'l Stmt. ¶ 49.

### DISCUSSION

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A material fact is one that has the potential to determine the outcome of a claim.  *Id.* at 248; *Oahn Nguyen Chung v. StudentCity.com*, *Inc.*, 854 F.3d 97, 101 (1st Cir. 2017).  To raise a genuine issue of material fact, the party opposing the summary judgment motion must demonstrate that the record contains evidence that would permit the finder of fact to resolve the material issues in his favor.  *See Triangle Trading Co. v. Robroy Indus.*, *Inc.*, 200 F.3d 1, 2 (1st Cir. 1999) ("Unless the party opposing a motion for summary judgment can identify a genuine issue as to a material fact, the motion may end the case.").

Through their Motion, Defendants argue that because the record lacks direct evidence that Defendants ever made an affirmative representation directly to Ms. Cartwright about the safety of JBP that would have informed her selection of the JBP product over another product, summary judgment should enter for Defendants on certain claims Plaintiff advances on behalf of the Estate because the claims depend on proof of reliance (namely breach of warranty, negligent misrepresentation, fraud, and fraudulent

concealment).  Mot. Mem. (ECF No. 46) at 3-5.  Defendants also argue that the damages Plaintiff seeks on behalf of the Estate on the claim of negligent misrepresentation exceed what is available under Maine law.  *Id.* at 4-5.  Finally, Defendants argue that the record lacks sufficient evidence to support "punitive and other damages not recoverable under survivorship claims asserted in the Amended Complaint." *Id.* at 5-7.

## A.    Representation/Reliance Claims

Defendants challenge is directed at Count IV (Breach of Express Warranty – 11 M.S.R.A., § 2-313), Count V (Negligent Misrepresentation), Count VI (Fraudulent Misrepresentation), and Count VIII (Fraudulent Concealment).  Defendants' lead argument is that the jury would not be able to find an express warranty, a negligent or fraudulent misrepresentation, or a material concealment since Defendants did not express anything to Plaintiff herself and there is no evidence why Plaintiff chose to use JBP rather than some other product to powder her shoes—for example, based on her subjective view that Defendants had assured her of the purity of the JBP product through their marketing activities.

Plaintiff argues that the lack of first-hand evidence concerning Ms. Cartwright's subjective understanding is not dispositive of the claim.  Plaintiff asserts that Defendants deceived Ms. Cartwright (and the general public) directly through advertising and indirectly through false statements made to the Food and Drug Administration ("FDA").  Pl. Opp'n (ECF No. 53) at 9.  Plaintiff argues that longstanding marketing efforts proclaiming the purity of JBP and Ms. Cartwright's brand loyalty are enough to support a jury determination that an express warranty was given, and that misrepresentation and

reliance are established; and that Maine tort law would also support a claim by someone harmed on account of a misleading statement made to the FDA. *Id.* at 10-13.

In effect, a controversy is raised concerning claims for relief that are, arguably, surplusage, given the existence of a cause of action in Maine law for strict liability for unsafe products. In fact, Plaintiff's lead claims, Count I (strict liability – failure to warn) and Count II (strict liability – design defect), which are not challenged, set the stage for a potential recovery regardless of express warranties or the particulars of how and whether Ms. Cartwright relied on Defendants' marketing of the JBP product. *See*, *e.g.*, *Bernier v. Raymark Indus., Inc.*, 516 A.2d 534, 537-58 (Me. 1986) (proof of manufacturer's knowledge of danger and failure to warn is sufficient); *Adams v. Buffalo Forge Co.*, 443 A.2d 932, 941 & nn.9-11 (Me. 1982) (proof of a defective or unreasonably dangerous product is sufficient); 14 M.R.S. § 221. Likewise, when it comes to an allegedly defective product, the negligence claim in Count III practically displaces the misrepresentation claim. Moreover, Counts I, II, and III also afford a greater potential for recovery because, in Maine, misrepresentation claims (fraud, deceit, negligent misrepresentation) are all commonly understood to be commercial torts rather than personal injury torts. *See* Jack H. Simmons, Donald N. Zillman & Robert H. Furbish, Maine Tort Law, Ch. 11 (2018); *see also Wildes v. Pens Unlimited Co.*, 389 A.2d 837, 841 (Me. 1978) ("the proper measure of damages is the plaintiff's lost bargain"). Given this reality, I am reluctant to wander too far into the weeds to rule in a way that might be viewed as reworking or expanding Maine law when it comes to Plaintiff's misrepresentation tort claims.

### 1. *Circumstantial evidence of reliance*

The fraud and negligent misrepresentation claims (Counts IV, V, VI, and VIII) anticipate proof of a false representation by the defendant and plaintiff's reliance on the false representation to her injury. *Philips v. Ripley & Fletcher Co.*, 541 A.2d 946, 950 (Me. 1998) (breach of warranty); *Harris Mgmt. v. Coulombe*, 151 A.3d 7, 16 n. 7 (Me. 2016) (fraud); *Barr v. Dyke*, 49 A.3d 1280, 1286-87 (Me. 2012) (fraud, including concealment); *Chapman v. Rideout*, 568 A.2d 829, 830 (Me. 1990) (negligent misrepresentation). If these elements of the claims cannot be established, summary judgment for Defendants would be appropriate.

In the context of personal care cosmetic products I conclude that there is no actual controversy in this case concerning the proposition that a company's marketing representations of product purity[2] can be a materially false representation if the defendant knows the product contains a toxic impurity capable of causing harm and a customer is in fact harmed by the impurity in question. Defendants do not argue otherwise. Instead, they challenge the extent to which circumstantial evidence can be relied on to supply the reliance link in the causal chain between an allegedly wrongful falsehood and a resulting harm, *i.e.*, whether a jury could infer that it is probable (for warranty and negligent misrepresentation) or highly probable (for fraud or concealment) that Ms. Cartwright used the JBP product because she understood it would be safe and non-toxic based on Defendants' marketing.

---

[2] Although I recognize that the "PUREST PROTECTION" marketing campaign was not always how Defendants labeled the JBP bottles, a jury could find that Defendants' core marketing has always conveyed a message of purity insofar as it has advocated that its product be applied to babies.

In terms of the record's ability to support a finding of reliance by Ms. Cartwright, this is a question about the limits of inferential reasoning, not one about the limits of Maine tort law. Put more simply, this is the stuff of courtroom law, not paper fights, for lawyers to marshal evidence and try to persuade a jury of the righteousness of their positions. Furthermore, in the context of a motion for partial summary judgment, where the evidence will come in in any event, the best approach here is to put the question to the jury to assess in the context of whatever reasonable and common sense inferences they can draw from the evidence presented at trial. Based on my review of the record, I can appreciate the contemplative puzzle raised by the Motion, but I am not immediately persuaded that the inferences needed to support a Plaintiff's verdict on these claims would necessarily be irrational or unduly speculative. Accordingly, the request for an entry of summary judgment as to Counts IV, V, VI, and VIII based on a lack of reliance is denied.

### 2. *Commercial interest as to Count V*

Count V alleges a claim of negligent misrepresentation. Defendants argue that under Maine law a claim of negligent misrepresentation is available only to plaintiffs harmed in relation to their own business transactions, not in relation to physical harms or personal injury. Mot. Mem. at 4-5. Plaintiff responds that Maine law is not strictly circumscribed to commercial disputes in the negligent misrepresentation context. Pl. Opp'n at 14-15. Furthermore, Plaintiff's opposition is informed by its reliance on Restatement (Second) of Torts §§ 310 and 311, which would expressly authorize recovery for physical harms.

8

In fact, the statement that negligent misrepresentation is a commercial tort is the product of another occasion in which the Law Court adopted a Restatement rule. *See Chapman v. Rideout*, 568 A.2d 829, 830 (Me. 1990) (adopting Restatement (Second) of Torts § 522(1)). That rule specifies that the negligent misrepresentation claim is available to those persons who are misled by false information provided to guide them in their own business transactions, rather than in relation to personal matters. The *Chapman* Court held:

> The Restatement (Second) of Torts defines the tort of negligent misrepresentation as follows:
>
> > One who, in the course of his business, profession or employment, *or in any other transaction in which he has a pecuniary interest*, supplies false information for the guidance of others <u>in their business transactions</u>, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.
>
> Restatement (Second) of Torts § 552(1) (1977) (emphasis added). We adopt the Restatement formulation as it applies to this case.

*Chapman v. Rideout*, 568 A.2d 829, 830 (Me. 1990) (second emphasis added).

Because the record does not support a finding that Ms. Cartwright's use of JBP was in any way associated with the receipt of guidance in a business transaction, the alleged misrepresentations cannot sustain a claim of negligent misrepresentation under Maine law and summary judgment will enter for Defendants on Count V.

### 3. *Third party reliance*

As an alternative to relying on circumstantial evidence of reliance, Plaintiff leans on sections 310 and 311 of the Restatement (Second) of Torts to overcome Defendants' challenge to the misrepresentation claims. When it comes to the development of state law,

9

the task for a federal court is to predict how Maine's highest court likely would rule. *Blakesley v. Marcus*, 158 F.4th 90, 95 (1st Cir. 2025); *Conformis, Inc. v. Aetna, Inc.*, 58 F.4th 517, 530 (1st Cir. 2023).  The Maine Supreme Judicial Court has a track record of adopting rules of law articulated by the authors of the Restatement of Torts.  *See*, *e.g.*, *Chapman*, 568 A.2d at 830.

Sections 310 and 311 of the Restatement of Torts address misrepresentation claims and (among other scenarios) the liability of a speaker to persons to whom they did not make any representation, but who suffer injury due to a representation made to another.  Section 310 concerns "conscious misrepresentation involving risk of physical harm."  It reads as follows:

> An actor who makes a misrepresentation is subject to liability to another for physical harm which results from an act done by the other or a third person in reliance upon the truth of the representation, if the actor
>
> (a) intends his statement to induce or should realize that it is likely to induce action by the other, or a third person, which involves an unreasonable risk of physical harm to the other, and
>
> (b) knows
>
> > (i) that the statement is false, or
> >
> > (ii) that he has not the knowledge which he professes.

Restatement (Second) of Torts § 310.  According to the Restatement's authors:

> The situation to which the rule . . . is most usually applied is where the misrepresentation is made concerning the physical condition of a thing, either land, structures, or a chattel, and induces the other to believe that the thing is in safe condition for his entry or use, or induces a third person to hold the land or chattel open to the entry or use of the other in the belief that it is safe for the purpose.  The rule is, however, equally applicable to

misrepresentation of other matters upon which the safety of the person or property of another depends.

*Id.* cmt. b.

The Rule set out in Restatement section 310 does not negate reliance, but instead extends the scope of liability to third parties injured on account of another's reliance on the alleged tortfeasor's misrepresentation. As applied to third-party liability scenarios, the authors explain that "[a] misrepresentation may be negligent not only toward a person whose conduct it is intended to influence but also toward all others whom the maker should recognize as likely to be imperiled by action taken in reliance upon his misrepresentation." *Id.* cmt. c.

Section 311 is similar and concerns "negligent misrepresentation involving risk of physical harm." Restatement (Second) of Torts § 311. It reads:

> (1) One who negligently gives false information to another is subject to liability for physical harm caused by action taken by the other in reasonable reliance upon such information, where such harm results
>
> > (a) to the other, or
> >
> > (b) to such third persons as the actor should expect to be put in peril by the action taken.
>
> (2) Such negligence may consist of failure to exercise reasonable care
>
> > (a) in ascertaining the accuracy of the information, or
> >
> > (b) in the manner in which it is communicated.

*Id.* The rule "extends to any person who, in the course of an activity which is in furtherance of his own interests, undertakes to give information to another, and knows or should realize

11

that the safety of the person of others may depend upon the accuracy of the information."
*Id.* cmt. b.

Neither section 310 nor section 311 is directly calibrated to products liability cases.

The summary judgment fact statements and evidence that Plaintiff offers to inform application of sections 310 and 311 is all based on Johnson & Johnson's communications with the FDA between 30 and 50 years ago. Among representative cases cited by the authors of the Restatement, concerning section 310, is a case involving statements by a manufacturer in support of FDA approval. *See In re Othopedic Bone Screw Liability Litig.*, 159 F.3d 817 (3d Cir. 1998). But there the Supreme Court ultimately held that allowing state tort law to impose liability for "fraud-on-the-FDA claims" is incompatible with the FDA's regulatory role and subject to conflict preemption, at least in the context of medical device authorization. *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 348-351 (2001). Here, I do not reach the issue of potential preemption because it was not raised.

All the same, because I have already ruled that the warranty and fraud claims (that is, Counts IV, VI, and VIII) can proceed based on expressions of purity and circumstantial evidence of reliance, I decline to either make a prediction at present about how the Law Court would receive Restatement (Second) of Torts §§ 310 & 311 in the context of a product liability case or resolve whether the fraud-on-the-FDA evidence raises a genuine issue. For instance, the FDA appears to have taken an active interest in talc contamination broadly and the summary judgment record concerning the FDA's knowledge or perspective on the matter is decidedly murky. In sidestepping these questions I do not suggest that the FDA evidence is improper; in fact, it appears to be relevant to other claims in the case. Nor

am I finally concluding that I will necessarily deny a request for an instruction that relates these Restatement rules to the jury, though if such an instruction is to be provided, I would give it in relation to the negligence count rather than as a statement of Maine fraud or deceit law or as a new rule allowing noncommercial recovery on a misrepresentation claim.

## B.    Wrongful Death Pleading and Statute of Limitation

Although Plaintiff's complaint does not expressly include a count labeled "wrongful death," Plaintiff seeks to recover for post-death losses on behalf of the Estate (or heirs) of Cynthia Cartwright (all counts except Count VII) and as part of his personal loss of consortium claim (Count VII). At oral argument, the question arose whether it is necessary to expressly include a count labeled wrongful death and I requested some further briefing on the matter. Defendants contend that such a count is required. Defs. Reply to Pl. Supp. Br. (ECF No. 93-1). Separately, Defendants assert that post-death recovery is barred by the two-year limitation period found in the Wrongful Death Act in effect on Ms. Cartwright's passing, *see* 18-A M.R.S. § 2-804(b) (2017) (repealed), and that recovery is therefore available only as a survival action (which would exclude post-death economic harm and loss of consortium).[3] Mot. at 6-7; Defs. Supp. Br. at 11-14 (ECF No. 88). Plaintiff maintains that it is not necessary to recite a count for wrongful death where the claim is otherwise asserted. Pl. Supp. Br. at 2-4 (ECF No. 87). Plaintiff also suggests that if the Court intends to rule otherwise, leave should be granted to amend the Amended Complaint to state the claim. *Id.* at 5-6. As for the limitation period, Plaintiff argues that

---

[3] "The statute governing a wrongful death action is the one in effect at the time of the death." *Smith v. Henson*, 339 A.3d 816, 820 n.3 (Me. 2025). The current Wrongful Death Act is 18-C M.R.S. § 2-807(2), but it did not take effect until September 1, 2019, *see id.*, more than two years after Ms. Cartwright's death.

it was tolled by Defendants' fraud and started to run only upon Plaintiff's discovery, in 2020, that the JBP product could contain asbestos that could cause mesothelioma with protracted use.  Resp. at 20 (citing 14 M.R.S. § 859).  The parties have also offered follow-on arguments through additional, unrequested briefs.  Pl. Mot. to Strike or in Alternative for Leave to Respond (ECF No. 90); Defs. Mot. for Leave to File Reply (ECF No. 93-1) (previously granted).

### 1.  *Pleading a Wrongful Death Claim*

Based on a review of Plaintiff's supplemental briefing, the Court is persuaded that Maine law does not require that all claims for wrongful death be pursued in a separate count so labeled for purposes of pleading sufficiency.  *See*, *e.g.*, *McCue v. City of Bangor*, No. 1:14-cv-00098-GZS, 2015 WL 6848539, at *12 n.25 (D. Me. Sept. 22, 2015), *report and recommendation adopted*, 2015 WL 6870056 (D. Me. Nov. 6, 2015) (treating separate wrongful death count as surplusage based on existence of assault and battery count); *but see Krempels v. Mazyck*, 868 F. Supp. 355, 358 (D. Me. 1994) (granting summary judgment against heir's separate emotional distress claim where heir had also asserted a claim under the wrongful death statute).  Based on my review of these decisions, and having in mind Rule 1 of the Federal Rules of Civil Procedure, I conclude that there is no clear Maine law pleading technicality that requires in every case a separate count labeled "wrongful death," and the issue is better understood as one of adequate notice under Federal Rule of Civil Procedure 8(a), which simply requires "a short and plain statement of the claim" and a "demand for the relief sought."  I conclude that Rule 8's requirements are met here because

Plaintiff's Amended Complaint adequately states a wrongful death claim despite the lack of a label.[4]

In addition to satisfying Rule 8, however, it is advisable from a practice perspective to consider whether the counts set out in a complaint allow for count-specific instruction of the jury without cumbersome entanglements. Here, Plaintiff has separately asserted a solitary count for loss of consortium on his own behalf in Count VII. That count will be treated as asserting Plaintiff's claim under the Wrongful Death Act because it is the only count asserted on his own behalf in the Amended Complaint and seeks both loss of consortium and post-death economic losses and punitive damages. This approach allows for proper instruction of the jury on the wrongful death recovery limitations and, as I see it, does the Estate no harm in relation to the remaining claims in which it is interested because Plaintiff appears to be the only beneficiary of any wrongful death recovery. *See* 18-A M.R.S. § 2-804(2) ("The amount recovered in every wrongful death action, except as otherwise provided, is for the exclusive benefit of the surviving spouse if no minor children . . . .").[5]

### 2. *Tolling of the Wrongful Death Claim under 14 M.R.S. § 859*

In the applicable, earlier version of the Wrongful Death Act, Maine law assured that Plaintiff would be able to maintain or pursue claims after Ms. Cartwright's death (for

---

[4] Precedent also teaches that statutory caps must be placed on damages for claims that sound in wrongful death regardless of how they are labeled in a complaint. *Carter v. Williams*, 792 A.2d 1093, 1099 (Me. 2002). Defendants request a summary judgment order to that effect, but the question of the scope of damages available on the wrongful death claim is more appropriately a subject for jury instruction.

[5] If I am incorrect in concluding that there are no minor children who might share in the wrongful death recovery, Plaintiff is advised to seek leave to further amend the Amended Complaint.

himself and Ms. Cartwright's heirs) that he could have maintained before her death. *See* 18-A M.R.S. § 2-804(a) (repealed) ("Whenever the death of a person shall be caused by a wrongful act, neglect or default, and the act, neglect or default is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages in respect thereof, then the person or the corporation that would have been liable if death had not ensued shall be liable for damages as provided in this section, notwithstanding the death of the person injured . . . ."). Under that version of the Act, a two-year statute of limitation applies. *Id.* § 2-804(b) (repealed).

Plaintiff commenced this action in state court in November 2024, whereas Ms. Cartwright passed in April 2017. Plaintiff's wrongful death claim, therefore, falls well outside of the applicable limitation period and is subject to dismissal with prejudice unless Plaintiff can establish that the limitation period was tolled or modified under Maine law.

Pursuant to 14 M.R.S. § 859, a legislative provision separate and apart from the Wrongful Death Act:

> If a person, liable to any action mentioned, fraudulently conceals the cause thereof from the person entitled thereto, or if a fraud is committed which entitles any person to an action, the action may be commenced at any time within 6 years after the person entitled thereto discovers that he has just cause of action . . . .

Defendants argue that because Maine's Wrongful Death Act is a creature of legislative grace[6] and no version of the Wrongful Death Act (former or current) has incorporated

---

[6] *Hammond v. Lewiston, A. & W. St. Ry.*, 76 A. 672, 673 (1909) ("[A]t common law no remedy by action existed for loss of life. The [wrongful death] right of action set up by the plaintiff is a pure creature of statute, and upon the fair construction of that statute this case stands or falls."); *see also Hossler v. Barry*, 403 A.2d 762, 765 (Me. 1979).

tolling based on fraudulent concealment or fraud, it would be improper to superimpose section 859's tolling provision on the wrongful death claim in this case. Supp. Mem. at 13 (ECF No. 88).

I am not convinced that Defendants' proposition is necessarily appropriate given that the Maine Legislature was the author of both the Wrongful Death Act's two-year limitation and the fraud-based tolling statute. The two provisions are not at war with each other and can be harmonized. Additionally, because Plaintiff's claim is derivative of the claims that Ms. Cartwright had in life, *see Brown v. Crown Equip. Corp.*, 960 A.2d 1188, 1195 (Me. 2008), the fraud component of the case arguably carries over in Plaintiff's favor. Defendants' request for a summary judgment foreclosing a wrongful death recovery is denied, but the matter can be revisited in the future.[7]

## C.    Punitive Damages

Tortious conduct that supports a compensatory damages award may also support a punitive damages award if the conduct in question was motivated by malice or was so outrageous that malice can be implied. *Cluney v. Brownells*, *Inc.*, 777 F. Supp. 3d 1, 16 (D. Me. 2025). The claims in this case that would support a compensatory damages award are not challenged in Defendants' Motion for Partial Summary Judgment. Given the

---

[7] Although I have characterized the derivative nature of the claim as potentially weighing against summary judgment based on the statute of limitations, it could also be the case that because Plaintiff's wrongful death claim is derivative of a fraud allegedly perpetrated on Ms. Cartwright, rather than a fraud perpetrated on Plaintiff, there is no fraudulent concealment or fraud practiced on Plaintiff himself that would support tolling beyond six years from the date of Ms. Cartwright's death. If that is the more appropriate conclusion, then a wrongful death recovery would be barred because Plaintiff filed this action more than six years after Ms. Cartwright's death. Because this case is going to trial regardless of my ruling on the statute of limitations, I conclude that it is better to potentially err on the side of Plaintiff and permit the jury to reach the wrongful death matter, including the statute of limitation question, to, hopefully, avoid the need for another trial. In other words, if the jury awards damages for wrongful death, I intend to reserve the statute of limitation question for further consideration under Federal Rule of Civil Procedure 50.

existence of a controversy concerning Defendants knowledge about the risk of daily exposure to asbestos occasioned by personal, bodily application of JBP over extended periods of time, their failure to advise the public and efforts to downplay or brush aside evidence of any risk, and their active encouragement of daily, bodily application of JBP through marketing activity, there is a genuine issue for trial on the appropriateness of a punitive damages award.

**D.      Motion to Strike**

Plaintiff filed a Motion to Strike certain content of Defendants' Supplemental Briefing (ECF No. 90) because it strayed from the matters for which I requested supplemental briefing. Plaintiff is concerned in part about the impact some supplemental assertions might have on my approach to the Restatement of Torts sections discussed above. I reached my ruling on that matter independently of any consideration of the challenged content. Plaintiff is also concerned that Defendants have attempted to rewrite the summary judgment narrative with unauthorized supplemental filings. I have made my summary judgment ruling based exclusively on the summary judgment statement of fact record without revisiting my ruling based on the challenged content. Finally, Plaintiff complains that Defendants offered supplemental legal argument concerning 14 M.R.S. § 859, although it was not asked for. For purposes of summary judgment, I have ruled in Plaintiff's favor on that issue.

Because the challenged content in Defendants' Supplemental Briefing did not produce a summary judgment ruling in Defendants' favor, the Motion to Strike will be denied as moot.

**E.    Leave to Amend**

Plaintiff has requested leave to amend the Amended Complaint should it prove necessary to overcome Defendant's challenge to his claim for recovery sounding in wrongful death. *See* Pl. Supp. Br. at 6-7.  I have not granted summary judgment on the wrongful death component of the case and therefore do not reach the propriety of amending the pleadings at this time.

## CONCLUSION

For the reasons set out above, Defendants' Motion for Partial Summary Judgment (ECF No. 45) is GRANTED IN PART and DENIED IN PART.  Summary judgment will enter for Defendants on Count V.  Plaintiff's Motion to Strike (ECF No. 90) is DENIED AS MOOT.

SO ORDERED.

Dated this 31st day of March, 2026.

/s/ Lance E. Walker
Chief U.S. District Judge